ROBERT H. WILDE (3466)
MICHAEL S. WILDE (14366)
BLACKBURN & STOLL, LC
Attorneys for Plaintiff
257 East 200 South, Suite 800
Salt Lake City, Utah  84111
Telephone:    (801) 521-7900
Fax:              (801) 521-7965

*Attorneys for Plaintiffs*
_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DARREN JENSEN, SCORPIO DON J. ERICKSON, BENJAMIN FLINDERS, RYAN BALTES, LILLIAN GEURTS,<br><br>        Plaintiff,<br><br>vs.<br><br>RED CLIFF ASCENT, INC., DANE KAY, SCOTT PETERSON, STEVE PETERSON, JIM SALISBURY, STEVE NADAULD, ANDREA BURGESS, SCOTT SCHILL,<br><br>        Defendants. | COMPLAINT<br><br><br><br>Case No. |

Plaintiffs, by the through counsel, complain of Defendants and allege as follows:

### PARTIES AND JURISDICATION

1. Plaintiff Darren Jensen is a citizen of the United States residing in Cedar City, Utah.

2. Plaintiff Scorpio Don J. Erickson is a citizen of the United States residing in Cedar City, Utah.

1

3. Plaintiff Benjamin Flinders is a citizen of the United States residing in Salt Lake City, Utah.

4. Plaintiff Ryan Baltes is a citizen of the United States residing in Salt Lake City, Utah.

5. Plaintiff Lillian Geurts is a citizen of the United States residing in Salt Lake City, Utah.

6. Defendant Red Cliff Ascent, Inc. is a Utah corporation.

7. Defendants, Dane Kay, Scott Peterson, Steve Peterson, Jim Salisbury, Steve Naduald, Andrea Burgess, and Scott Schill are alleged to be employees of Red Cliff Ascent, Inc. acting directly or indirectly in the interest of an employer in relation to Plaintiffs.

8. That jurisdiction is found in this Court by virtue of 29 U.S.C. § 216(b).

9. Plaintiffs were, at all relevant times, employees of the Defendants as that term is defined by the FLSA.

10. Defendants were, at all relevant times, employers of the Plaintiffs as that term is defined by the FLSA.

## FACTUAL BACKGROUND

11. Defendant Red Cliff Ascent, Inc. is a corporation which operates year round providing wilderness therapy to youth and adults.

12. Plaintiffs are employees and ex-employees of Defendants.

13. Plaintiffs were paid a set rate for 13 hours of work each day.

*Plaintiff Darren Jensen*

14. Plaintiff Jensen was employed by Defendant beginning in May, 2010.

15. Plaintiff Jensen was hired as Field Staff, and was eventually promoted to the positions of Head Instructor and Logistics Coordinator.

16. Plaintiff Jensen participated in a mandatory unpaid training of nine days at the end of April, 2010.

17. Plaintiff Jensen's mandatory training occurred during his normal work schedule, the training was directly related to his position, and he performed no other work during the training.

18. Plaintiff Jensen was not compensated for regular or overtime pay during the nine day mandatory training.

19. From May, 2010 until the present, Plaintiff Jensen's schedule consisted of eight days on and six days off as a Logistics Coordinator with four days falling in one seven day period and four days falling in the next seven day period.

20. During the 8 day working period, Plaintiff Darren Jensen is required to remain at Defendants' base camp in Enterprise, UT and not allowed to go to his home in Cedar City, UT or to any other place not within fifteen minutes of Defendants' Enterprise, UT location.

21. Plaintiff Jensen is required to be on call around the clock during his eight day working shift.

22. Plaintiff Jensen is required to sleep on Defendants' premises in Enterprise, UT during his 8 day working shift.

23. Plaintiff Jensen actively works about fifteen hours per day, and is on call for the remaining nine hours during the eight day shifts.

24. Plaintiff Jensen is regularly interrupted during his sleeping hours to perform work for Defendants such as making deliveries to and from Defendants' field operations.

25. Including on call time, Plaintiff Jensen works 192 hours per eight day shift, or 96 hours in each pay period.

26. Plaintiff Jensen is currently paid at a rate of $130 per thirteen hour day worked.

27. Plaintiff Jensen was only paid for thirteen hours of work in each of the eight days in his shift, and is not compensated for the other eleven hours worked.

28. Plaintiff Jensen is paid only $520 per week.

29. The "overtime" paid by Defendants was not at a rate of time and a half.

30. Plaintiff Jensen is owed the difference between hours worked and hours paid, for every week since he began employment at Red Cliffs.

31. Plaintiff Jensen complained to Scott Schill that he is not being paid for his hours worked and that it is a violation of state and federal law.

32. Defendants' response to Plaintiff Jensen has been to inform him that he will no longer be employed as a Logistics Coordinator as of April 26, 2013.

33. Defendants gave Plaintiff Jensen the choice of returning to field staff at that time or no longer having a job.

34. Plaintiff Jensen has previously discussed his situation with Scott Schill and had made it clear that he is not able to work as field staff because he needs to be in contact with his family which would not be possible for a field staff employee.

35. Defendants' adverse employment action in forcing Plaintiff Jensen out of his job as a Logistics Coordinator occurred as retaliation for Plaintiff Jensen's complaining of Defendants' FLSA violations.

36. Defendants were aware they were in violation of the FLSA, and willfully violated the statute.

*Plaintiff Scorpio Don J. Erickson*

37. Plaintiff Erickson has been employed by Defendants since February, 2012.

38. Plaintiff Erickson participated in a mandatory unpaid training lasting nine days starting at the end of May, 2012.

39. Plaintiff Erickson's mandatory training occurred during his normal work schedule, the training was directly related to his position, and he performed no other work during the training.

40. Plaintiff Erickson's mandatory training simulated the experience of a student, learning where to hike, how to prepare for hikes, CPR, and first aid to prepare him to work in the field.

41. Plaintiff Erickson was not compensated for regular or overtime pay during the nine day mandatory training.

42. From the end of May, 2012 until the present, Plaintiff Erickson's schedule consisted of eight days on and six days off with four days falling in one seven day period and four days falling in the next seven day period.

43. During the eight day working period, Plaintiff Erickson is required to remain at Defendants' field operations camp near Enterprise, UT and not allowed to go to his home in Cedar City, UT or any other location.

44. Plaintiff Erickson is on call around the clock during his eight day working shift.

45. Plaintiff Erickson is required to sleep at Defendants' field operations camp near Enterprise, UT during his eight day working shift.

46. Plaintiff Erickson actively works sixteen hours per day, and is on call for the remaining eight hours during the eight day shifts.

47. Plaintiff Erickson is regularly interrupted during his sleeping hours to perform work for Defendants.

48. During the night Plaintiff Erickson regularly is required to sleep on tarps which restrict the movement of troubled clients to prevent them from hurting themselves or others.

49. During the night, Plaintiff Erickson is required to remain awake whenever any client gets out of their sleeping bag to ensure that the client returns.

50. Including on call time, Plaintiff Erickson works 192 hours per eight day shift, or 96 hours in each pay period.

51. Plaintiff Erickson is currently paid at a rate of $125 per thirteen hour day worked.

52. Plaintiff Erickson is only paid for thirteen hours of work in each of the eight days in his shift, and is not compensated for the other eleven hours worked.

53. The "overtime" paid by Defendants is not at a rate of time and a half.

54. Plaintiff Erickson is paid just $500 per week.

55. Plaintiff Erickson is owed the difference between hours worked and hours paid for every week since he began employment at Red Cliffs.

56. Defendants were aware they were in violation of the FLSA, and willfully violated the statute.

*Plaintiff Ben Flinders*

57. Plaintiff Flinders has been employed by Defendants since March, 2011.

58. Plaintiff Flinders participated in a mandatory unpaid training lasting nine days starting March 10, 2011.

59. Plaintiff Flinders' mandatory training occurred during his normal work schedule, the training was directly related to his position, and he performed no other work during the training.

60. Plaintiff Flinders' mandatory training simulated the experience of a student, learning where to hike, how to prepare for hikes, CPR, and first aid to prepare him to work in the field.

61. Plaintiff Flinders was not compensated for regular or overtime pay during the nine day mandatory training.

62. From March, 2011 until the present, Plaintiff Flinders' schedule consisted of eight days on and six days off with four days falling in one seven day period and four days falling in the next seven day period.

63. During the eight day working period, Plaintiff Flinders is required to remain at Defendants' field operations camp near Enterprise, UT and not allowed to go to his home in Salt Lake City, UT or any other location.

64. Plaintiff Flinders is on call around the clock during his eight day working shift.

Z:\D\12739\Complaint.doc

65. Plaintiff Flinders is required to sleep at Defendants' field operations camp near Enterprise, UT during his eight day working shift.

66. Plaintiff Flinders actively works sixteen hours per day, and is on call for the remaining eight hours during the eight day shifts.

67. Plaintiff Flinders is regularly interrupted during his sleeping hours to perform work for Defendants.

68. During the night Plaintiff Flinders regularly is required to sleep on tarps which restrict the movement of troubled clients to prevent them from hurting themselves or others.

69. During the night, Plaintiff Flinders is required to remain awake whenever any client gets out of their sleeping bag to ensure that the client returns.

70. Including on call time, Plaintiff Flinders works 192 hours per eight day shift, or 96 hours in each pay period.

71. Plaintiff Flinders is currently paid at a rate of $125 per thirteen hour day worked.

72. Plaintiff Flinders was only paid for thirteen hours of work in each of the eight days in his shift, and is not compensated for the other eleven hours worked.

73. The "overtime" paid by Defendants is not at a rate of time and a half.

74. Plaintiff Flinders is paid just $500 per week.

75. Plaintiff Flinders is owed the difference between hours worked and hours paid for every week since he began employment at Red Cliffs.

76. Defendants were aware they were in violation of the FLSA, and willfully violated the statute.

*Plaintiff Ryan Baltes*

77. Plaintiff Baltes has been employed by Defendants since March, 2011.

78. Plaintiff Baltes participated in a mandatory unpaid training lasting nine days in April, 2011.

79. Plaintiff Baltes' mandatory training occurred during his normal work schedule, the training was directly related to his position, and he performed no other work during the training.

80. Plaintiff Baltes' mandatory training simulated the experience of a student, learning where to hike, how to prepare for hikes, CPR, and first aid to prepare him for his work as field staff.

81. Plaintiff Baltes was not compensated for regular or overtime pay during the ninie day mandatory training.

82. From March, 2011 until the present, Plaintiff Baltes' schedule consisted of eight days on and six days off with four days falling in one seven day period and four days falling in the next seven day period.

83. During the eight day working period, Plaintiff Baltes is required to remain at Defendants' field operations camp near Enterprise, UT and not allowed to go to his home in Salt Lake City, UT or any other location.

84. Plaintiff Baltes is on call around the clock during his eight day working shift.

85. Plaintiff Baltes is required to sleep at Defendants' field operations camp near Enterprise, UT during his eight day working shift.

86. Plaintiff Baltes actively works sixteen hours per day, and is on call for the remaining eight hours during the eight day shifts.

Z:\D\12739\Complaint.doc

87. Plaintiff Baltes is regularly interrupted during his sleeping hours to perform work for Defendants.

88. During the night Plaintiff Baltes regularly is required to sleep on tarps which restrict the movement of troubled clients to prevent them from hurting themselves or others.

89. During the night, Plaintiff Baltes is required to remain awake whenever any client gets out of their sleeping bag to ensure that the client returns.

90. Including on call time, Plaintiff Baltes works 192 hours per eight day shift, or 96 hours in each pay period.

91. Plaintiff Baltes is currently paid at a rate of $125 per thirteen hour day worked.

92. Plaintiff Baltes is only paid for thirteen hours of work in each of the eight days in his shift, and is not compensated for the other eleven hours worked.

93. The "overtime" paid by Defendants was not at a rate of time and a half.

94. Plaintiff Baltes is paid just $500 per week.

95. Plaintiff Baltes is owed the difference between hours worked and hours paid for every week since he began employment at Red Cliffs.

96. Defendants were aware they were in violation of the FLSA, and willfully violated the statute.

*Plaintiff Lillian Geurts*

97. Plaintiff Geurts was hired by Defendants on or around August 5, 2011.

98. Plaintiff Geurts left Defendants' employ on or around October 22, 2012 but is still engaged sporadically at reunions or as needed.

Z:\D\12739\Complaint.doc

99. Plaintiff Geurts participated in a mandatory unpaid training lasting nine days from July to August, 2011.

100. Plaintiff Geurts mandatory training occurred during her normal work schedule, the training was directly related to her position, and she performed no other work during the training.

101. Plaintiff Geurts' mandatory training simulated the experience of a student, learning where to hike, how to prepare for hikes, CPR, and first aid to prepare her for her work as field staff.

102. Plaintiff Geurts was not compensated for regular or overtime pay during the nine day mandatory training.

103. During her employment, Plaintiff Geurts' schedule consisted of eight days on and six days off with four days falling in one seven day period and four days falling in the next seven day period.

104. During the eight day working period, Plaintiff Geurts was required to remain at Defendants' field operations camp near Enterprise, UT and not allowed to go to her home in Salt Lake City, UT or any other location.

105. Plaintiff Geurts was on call around the clock during her eight day working shift.

106. Plaintiff Geurts was required to sleep at Defendants' field operations camp near Enterprise, UT during her eight day working shift.

107. Plaintiff Geurts actively worked sixteen hours per day, and was on call for the remaining eight hours during the eight day shifts.

11

108. Plaintiff Geurts was regularly interrupted during her sleeping hours to perform work for Defendants.

109. During the night Plaintiff Geurts was regularly required to sleep on tarps which restrict the movement of troubled clients to prevent them from hurting themselves or others.

110. During the night, Plaintiff Geurts was required to remain awake whenever any client gets out of their sleeping bag to ensure that the client returns.

111. Including on call time, Plaintiff Geurts worked 192 hours per eight day shift, or 96 hours in each pay period.

112. Plaintiff Geurts was paid at a rate of $125 per thirteen hour day worked while a Head Instructor.

113. Plaintiff Geurts was only paid for thirteen hours of work in each of the eight days in her shift, and was not compensated for the other eleven hours worked.

114. The "overtime" paid by Defendants was not at a rate of time and a half.

115. Plaintiff Geurts was paid just $500 per week.

116. Plaintiff Geurts' is owed the difference between hours worked and hours paid, for every week since she began employment at Red Cliffs.

117. Defendants were aware they were in violation of the FLSA, and willfully violated the statute.

### FIRST CAUSE OF ACTION – MINIMUM WAGE VIOLATION

118. Plaintiffs were required to attend training before they could begin their employment.

Z:\D\12739\Complaint.doc

119. 29 U.S.C. § 206 et seq. prevents the employment of persons without the payment of a minimum wage.

120. 29 C.F.R. § 785.29 includes job training as hours worked, subjecting training to the minimum wage requirement.

121. Plaintiffs' training was directly related to their respective jobs by virtue of simulating the experience of a student such as learning where to hike, how to prepare for hikes, CPR, and first aid to prepare for work as field staff.

122. Plaintiffs were not compensated for their time spent at training.

123. Defendants are liable to each Plaintiff for 40 hours of unpaid training at the minimum wage of $7.25 per hour, or $290.

124. The actions of Defendants in violating these provisions of the FLSA were willful and not in good faith, and Plaintiffs are entitled to liquidated damages equal to sums owed them as minimum wage.

**SECOND CAUSE OF ACTION – UNPAID OVERTIME VIOLATION**

*Overtime During Training*

125. 29 U.S.C. § 207 et seq. requires the payment of overtime for all hours worked above 40 hours per week.

126. During mandatory job training, Plaintiffs each worked 108 hours per week.

127. Plaintiffs were not compensated for overtime pay for hours worked above 40 hours per week during job training.

128. Overtime pay at the minimum wage is $10.88 per hour.

129. During training, Plaintiffs worked 68 hours above 40 hours, and are thus entitled to $739.84 in unpaid overtime wages.

Z:\D\12739\Complaint.doc

*Overtime Payments Not Made at Time and a Half*

130. During each pay period, each Plaintiff was compensated for 52 hours of work, 40 hours of regular time and 12 hours of overtime.

131. Each Plaintiff must be compensated for overtime hours at a rate of not less than time and a half of their regular hourly wage.

132. Defendants' weekly twelve hours of "overtime" payments each week were at each Plaintiff's regular hourly wage, and not at time and a half.

133. Defendant is liable to Plaintiffs for not paying time and a half for each hour of "overtime" paid.

*Overtime Payments Not Made*

134. Each Plaintiff works 96 hours per pay period.

135. Plaintiffs were entitled to 40 hours of regular time and 56 hours of overtime.

136. Plaintiffs were paid for 40 hours of regular time, and 12 hours of "overtime" at their regular rate.

137. Defendants are liable for overtime payments not made at time and a half.

138. Defendants are liable for an additional 44 hours per week in overtime payments for hours worked which are not compensated.

139. The actions of Defendants in violating these provisions of the FLSA were willful and not in good faith, and Plaintiffs are entitled to liquidated damages equal to sums owed them as overtime.

**THIRD CAUSE OF ACTION - RETALITAION**

Z:\D\12739\Complaint.doc

140. Plaintiff Jensen made complaints to Scott Schill about working hours which were not being compensated and offered several suggestions as to how the situation could be improved.

141. Plaintiff Jensen's complaints were an assertion of his rights under the FLSA.

142. Defendants' response to Plaintiff Jensen's assertion of FLSA rights was to inform him that he would no longer have a job as a Logistics Coordinator as of April 24, 2013.

143. The pending termination of Plaintiff Jensen is an adverse employment action taken against him because he asserted rights under the FLSA.

144. 29 U.S.C. § 215 et seq. prevents the retaliation against employees for asserting their rights under the FLSA.

145. The actions of Defendants in violating these provisions of the FLSA were willful and not in good faith, and Plaintiff Jensen is entitled to compensatory and punitive damages.

WHEREFORE, Plaintiffs pray judgment against the Defendants as follows:

1. For the Plaintiffs' minimum wage earned during training;

2. For the Plaintiffs' overtime wage earned during training;

3. For the Plaintiffs' overtime payments not paid at time and a half, and overtime payments not paid at all;

4. For liquidated damages in the amount of each Plaintiff's owing wages;

5. For compensatory and punitive damages for Defendants' retaliation;

6. For attorney's fees;

15

7. For interest on the foregoing, costs of court, and such other relief as deemed just
and equitable.

DATED this 17th day of April, 2013.

/s/ Michael S. Wilde
MICHAEL S. WILDE
Attorney for Plaintiff

16