# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DARREN JENSEN, SCORPIO DON J. ERICKSON, BENJAMIN FLINDERS, RYAN BALTES, ADAM GLEASON, LILLIAN GEURTS,<br><br>Plaintiffs,<br><br>vs.<br><br>REDCLIFF ASCENT, INC., DANE KAY, SCOTT PETERSON, STEVE PETERSON, JIM SALISBURY, STEVE NADAULD, ANDREA BURGESS, SCOTT SCHILL,<br><br>Defendants. | **ORDER GRANTING MOTION TO AMEND COMPLAINT**<br><br>Case No. 2:13-CV-00275-TC-EJF<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Evelyn J. Furse |

Based upon Darren Jensen, Scorpio Don J. Erickson, Benjamin Flinders, Ryan Baltes, Adam Gleason, and Lillian Geurts' (the "Jensen Plaintiffs") Motion to Amend Complaint (ECF No. 38) and the corresponding Memoranda, the Court[1] GRANTS the Motion.[2] The Court finds Redcliff Ascent, Inc., Dane Kay, Scott Peterson, Steve Peterson, Jim Salisbury, Steve Nadauld, Andrea Burgess, and Scott Schill's (the "Redcliff Defendants") responses to discovery and discovery likely obtained subsequent to this Motion, may support the proposed addition of two Defendants. Therefore, the Court gives the Jensen Plaintiffs the opportunity to submit an amended complaint with sufficient facts alleged to make plausible a claim that the two additional proposed Defendants exercised operational control over the Jensen Plaintiffs.

---

[1] On October 22, 2013, District Judge Tena Campbell referred this case to Magistrate Judge Evelyn J. Furse under 28 U.S.C. § 636(b)(1)(A). (ECF No. 39.)
[2] The Court has read all of the submissions and finds oral argument unnecessary. (DUCivR 7-1(f).)

## STANDARD

Courts liberally grant motions for leave to amend on the policy that pleadings should enable the parties to have a claim heard on its merits. *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185-86 (10th Cir. 1999). Courts "generally refuse leave to amend only on 'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Duncan v. Manager*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

## DISCUSSION

The Jensen Plaintiffs move to amend their Complaint to add Mark Noe and Ellie Strong as Defendants, arguing they constitute employers liable under the Fair Labor Standards Act ("FLSA"). (Pl.'s Mot. 1-2, ECF No. 38.) The Redcliff Defendants oppose the Jensen Plaintiffs' Motion arguing the Jensen Plaintiffs misinterpret and misapply Tenth Circuit precedent, namely *Baker v. Flint Eng'g & Construc. Co.*, 137 F.3d 1436 (10th Cir. 1998). (Def.'s Opp'n 2, ECF No. 40.) The Redcliff Defendants claim even if the Jensen Plaintiffs did correctly interpret *Baker*, the allegations regarding Noe and Strong in the Jensen Plaintiffs' Proposed Amended Complaint do not meet *Baker's* requirements for individual liability under the FLSA. (Def.'s Opp'n 3, ECF No. 40.)

In *Baker*, the Tenth Circuit applied a test based on economic reality to determine whether a plaintiff qualifies as an employee, and not an independent contractor, thus enabling him/her to sue under the FLSA. *Baker*, 137 F.3d at 1440. The Tenth Circuit did not explicitly determine what test a court must use to decide who a plaintiff can name as a defendant.

*Baker* undisputedly guides the determination of whether a party constitutes an employee or an independent contractor for FLSA liability purposes. To make such a determination, the court necessarily considered the relationship of the plaintiff to the defendant, who could have constituted either an employer or a contracting party. But the Tenth Circuit has yet to announce either a test for FLSA individual liability or *Baker's* possible application thereto. The Tenth Circuit's only discussion of individual liability to date appears in *Hinsdale v. City of Liberal*, 19 F. App'x 749 (10th Cir. 2001). In *Hinsdale*, the plaintiff alleged retaliatory termination by the City Commissioners in violation of the FLSA. *Id*. at 763. The Tenth Circuit denied the City Commissioners' motion for summary judgment seeking dismissal of the claims against them in their individual capacities because they did not support their argument of lack of individual liability under the FLSA with case law. *Id*.

While the Tenth Circuit has not ruled on individual liability under the FLSA, a number of other circuits have. Taken as a whole those circuit decisions persuade this Court to find that the FLSA provides for individual liability as determined in light of the economic realities of the employment relationship, in which assessment of an individual's operational control plays a central role. Based on the discovery[3] cited in the briefing and upon the Redcliff Defendants' description of Noe and Strong as managers (Def.'s Opp'n 4, ECF 40), the Court will give the Jensen Plaintiffs the opportunity to amend their Complaint to add Noe and Strong as Defendants

---

[3]  INTERROGATORY NO. 8: For the Plaintiffs, and each of them, please identify all persons associated with the Defendant RedCliff Ascent who had the power to hire and fire employees, supervise and control employee work schedules or conditions of employment, determine the rate and method of payment, *or* maintain employment records.
RESPONSE TO INTERROGATORY NO. 8: Scott Schill, Andrea Burgess, Mark Noe, Ellie Strong.

(Pl.'s Mot Ex. 1 Def.'s Resp. to Pl.'s Disc. Reqs. 5, ECF No. 38-1 (emphasis added).)

under the relevant standard.

>  I.  **Applicability of the Tenth Circuit's *Baker* decision**

In *Baker* the Tenth Circuit set forth a six-part test, known as the "economic realities" test, to determine whether a person qualifies as an employee or an independent contractor. *Baker*, 137 F.3d at 1440. The court elaborated on the six part test stating: "The economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Baker*, 137 F.3d 1440 (citing *Watson v. Graves,* 909 F.2d 1549, 1553 (5th Cir.1990)). This sub-inquiry into the alleged employer plays a role in determining whether an individual qualifies as an independent contractor or an employee. The Jensen Plaintiffs contend this language creates a test that also suffices to determine whether an individual constitutes an employer subject to individual liability. Indeed, the Fifth Circuit applies identical language to the determination of individual employer liability. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). The District of Colorado has used this test in the FLSA context. *Robillard v. Bd. of County Comm'rs*, No. 11-CV-03180-PAB-KMT, 2012 WL 4442822, *2 (D. Colo. Sept. 26, 2012). Additionally, district courts in New Mexico and Utah have used this test to determine whether individual liability existed under the Family and Medical Leave Act based on the definition of employer in the FLSA. *See Saavedra v. Lowe's Home Ctr., Inc.*, 748 F. Supp. 2d 1273, 1292-93 (D. N.M. 2010); *Stuart v. Regis Corp.*, No. 1:05CV00016DAK, 2006 WL 1889970 at *6 (D. Utah July 10, 2006) (noting that "[i]ndividuals who have no corporate role beyond a managerial position are not employers under the FMLA").

4

Although the Jensen Plaintiffs argue that *Baker* supports the proposition that Mark Noe and Ellie Strong constitute employers within the meaning of the FLSA and that *Baker* dictates the Court should add them as Defendants, the Tenth Circuit has not ruled on whether *Baker's* employee/independent contractor distinction guides individual liability of employers. Indeed, some district courts within the Tenth Circuit have applied other tests. *See Does v. Rodriguez*, No. 06-CV-00805-LTB, 2007 WL 684117, *3 (D. Colo. Mar. 2, 2007) (following the First Circuit test to determine individual liability under the FLSA); *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1189-90 (D. Colo. 2012) (citing both *Baker* and Eleventh Circuit test to determine whether person constituted an "employer" for purposes of sharing in the tip pool under the FLSA); *Bass v. PJCOMN Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 1322020, *4-5 (D. Colo. April 5, 2011) (the court stated, "[m]indful that the Tenth Circuit has not addressed the individual liability issue and that courts differ as to the proper analysis for determining personal liability under the FLSA, this Court cannot agree with Plaintiffs that 'substantial corporate ownership' is an essential element necessitating confirmation through deposition before alleging individual FLSA liability in this district," but did not state a test itself and noted the Tenth Circuit has not addressed individual liability under the FLSA).

As the Redcliff Defendants note, the FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee…." 29 U.S.C. § 203(d). The FLSA defines the verb "employ" expansively to mean "suffer or permit to work." 29 U.S.C. § 203(g). The Redcliff Defendants argue the Court must decide "whether or not [Noe and Strong] suffered or permitted the employees to work." (Def.'s Opp'n 3, ECF No.

40.) The Court agrees the inquiry begins with the statutory language and that it must make that determination, but the question remains, how.

## II. Other Circuits' holdings as to FLSA individual liability

To date, all circuits that have weighed in on the issue have applied a test considering the economic reality to determine whether an individual has employer liability with consistent focus upon operational control. These tests all grow out of the Supreme Court's instruction that "the 'economic reality' rather than 'technical concepts'" should govern in considering employment in the FLSA context. *See Goldberg v. Whitaker House Co-Op., Inc.,* 366 U.S. 28, 33 (1961) (finding a cooperative an employer and members of the cooperative employees for purposes of the FLSA). The Court now addresses each circuit's approach to FLSA individual liability in turn to flesh out the kinds of situations that demonstrate a plausible claim of individual liability.

### A. First Circuit

In the First Circuit, "FLSA individual liability cases typically address 'a corporate officer with operational control of a corporation's covered enterprise,' rather than a mere employee." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 48 (1st Cir. 2013). Most recently, for instance, the First Circuit overturned the Rule 12(b)(6) dismissal of a president and CEO, who the plaintiff did not allege possessed any ownership interest in the defendant company, finding the allegations sufficient to plead individual liability. *Id*. at 48-50. Noting that its prior case law focused on executive or ownership positions for determining the existence of individual liability, the First Circuit cautioned it did *not* intend to hold

> that the FLSA's definition of employer excludes those without high executive positions or ownership interests, as the economic reality test speaks broadly of individuals who have "operational control over significant aspects of the business." But the case law's emphasis on ownership and financial control is sensible because these factors suggest a

6

> strong degree of authority over the corporation's finances and, as a corollary, the ability to "caus[e] the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits."

*Id.* at 48 (quoting *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998)) (omitting internal citations) (alteration in original). The First Circuit had previously noted in *Agnew* "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). Through *Manning's* cautions against limiting its individual liability principles to executives and those with ownership interests, the First Circuit's test for individual liability appears to center on operational control and the ability of an individual to cause a corporation to undercompensate the plaintiff employees.

### B. Second Circuit

When the Second Circuit first confronted the question of "whether an individual within a company that undisputedly employs a worker is personally liable for damages as that worker's 'employer,'" it noted that "'operational control [was] at the heart of this case." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105, 107 (2d Cir. 2013). Elaborating on the meaning of that central premise, the court explained "[a] person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The Second Circuit also warned: courts "must be mindful, when considering an individual defendant, to ascertain that the individual was engaged in the culpable company's affairs to a degree that it is logical to find him liable to plaintiff employees." *Id.* at 117. Applying that view to defendant Catsimatidis, the Second Circuit

7

determined that "his active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees, and his actions in individual stores—demonstrate that he was an 'employer' for purposes of the FLSA." *Id*.

### C. Fifth Circuit

In 2012, the Fifth Circuit applied the language quoted in *Baker* to determine individual liability for FLSA purposes. The court considered: an individual's power to hire and fire employees, supervision or control of employee work schedules or conditions of employment, determination of the rate or method of payment, and maintenance of employee records. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). The circuit noted a "dominant theme in the case law": holding "those who have operating control over employees within companies … individually liable for FLSA violations committed by the companies." *Id*. at 357. The court added that "[a]n individual's operational control can be shown through his power to hire and fire, ability to supervise, power to set wages, and maintenance of employment records" and that not every case needs to have every element, but at least some elements must exist. *Id*. The Fifth Circuit explicitly "decline[d] to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the *economic reality* of their involvement in the company." *Id*. (emphasis added). In *Gray*, the Fifth Circuit ultimately found individual defendant Powers—a member of the limited liability corporation that employed Gray—"was simply not sufficiently involved in the operation of the club to be an employer." *Id*. at 353, 357. In July 2012, the Fifth Circuit took the same "operating control" approach, citing *Gray*, to find that film production staff did not qualify as union members' direct supervisors and did not exercise substantial control over

8

the members' employment, and so did not constitute "employers" liable for FLSA violations. *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 251-253 (5th Cir. 2012).

### D. Sixth Circuit

A Sixth Circuit case cited the First Circuit's *Agnew* decision for the proposition that "'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *[Dole v. Elliott Travel & Tours, Inc.,](https://...) 942 F.2d 962, 965 (6th Cir. 1991)* (citing *[Agnew](https://...)*, 712 F.2d at 1511). In *Dole*, the Sixth Circuit found "economic realities" indicated the president and co-owner of defendant Elliot Travel & Tours, Inc. "was an employer within the meaning of the FLSA, … chargeable with personal liability for failure to comply with the FLSA." *Id*. at 966. The "economic realities" demonstrated that the president / co-owner "was the chief corporate officer, had significant ownership interest in the corporation, and had control over significant aspects of the corporation's day-to-day functions, including determining employee salaries." *Id*. Moreover, although other employees of Schubiner computed the plaintiff employees' hours and overtime, and a general manager dealt with day-to-day problems arising in corporate operations, these facts did not preclude the president's individual liability. *Id*. The court held that whether the defendant "ha[d] 'operational control of *significant aspects* of the corporation's day to day functions'" represented the most important factor in finding individual liability under the FLSA. *Id*. (citation omitted, emphasis in original). The Sixth Circuit reiterated its holding in *Dole* two years later, finding a chief executive officer with a significant ownership interest in the business and control over salaries and hiring at the business individually liable under the FLSA. *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994).

9

### E. Ninth Circuit

In a case involving a chief operating officer and a chief executive officer/chairman of the board, the Ninth Circuit affirmed individual liability under the FLSA, holding "[w]here an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Lambert v. Ackerley*, 180 F.3d 997, 1001-1002, 1012 (9th Cir. 1999). However, the Circuit also found the district court's jury instructions

> that [the jury] could find the individual Ackerleys liable only if it determined that they had a "significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ]salaries; [the responsibility to] maintain [ ] employment records"

proper. *Id*. This instruction would seem to require both an ownership interest *and* these other control factors contrary to *Lambert*. *See id.* One must keep in mind the individual defendants, not the plaintiffs, challenged the instruction and thus did not argue that the instruction too narrowly constricted liability but rather that it over-expanded individual liability. *Id*. Nevertheless, the Court found the instruction consistent with its prior ruling. Thus whether the Ninth Circuit requires an ownership interest remains an open question.

### F. Eleventh Circuit

Finally, the Eleventh Circuit has long observed that "Congress has expressly disregarded the corporate shield with respect to the analysis of coverage under the FLSA." *Patel v. Wargo*, 803 F.2d 632, 636 (11th Cir. 1986). The Eleventh Circuit deems "operational control" key to determining individual FLSA liability: in *Patel* the court upheld the district court's finding that an individual who served both as president, as well as a director and principal stockholder, did not constitute an employer because he did not "have operational control of significant aspects of

10

[the company's] day-to-day functions, including compensation of employees or other matters 'in relation to an employee.'" *Id.* at 637-638. In 2008, the Eleventh Circuit revisited *Patel*, noting that although the defendant in *Patel could* have played a greater role in company operations, its decision that he "'lacked the operational control necessary for the imposition of liability as an "employer" under the FLSA'" hinged on the role that he actually played. *Alvarez Perez v. Sanford-Orland Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008) (quoting *Patel*, 803 F.2d at 638). Thus the court reaffirmed that though a defendant "could have played a greater role in the day-to-day operations of the [ ] facility if he had desired, ... unexercised authority is insufficient to establish liability as an employer" for FLSA individual liability purposes. *Id*.

Together, the circuits' holdings suggest applying a variation on *Baker's* economic realities test to Noe and Strong; focusing the inquiry on their operational control over the Jensen Plaintiffs provides the relevant avenue for analysis of whether the Jensen Plaintiffs can name these two individually as "employers." One element of *Baker's* economic reality test considers "the degree of control exerted by the alleged employer over the worker," which bears resemblance to the operational control test discussed extensively in the other circuits. *Baker*, 137 F.3d at 1440. Moreover, the statute's definition of "employ" invites inquiry into whether a potential defendant suffered or permitted employees to work; focusing on operational control provides a method, grounded in the economic realities of a company, for evaluating when individual liability may arise.

### III. Futility

The Redcliff Defendants also imply that the Court should deny the Jensen Plaintiffs'

Motion because the Proposed Amended Complaint would not survive a motion to dismiss, thus rendering it futile. (Def.'s Opp'n 3, ECF No. 40.) The Redcliff Defendants argue "no allegation in the Amended Complaint … fits [the statutory definition of 'employer'] and therefore, Plaintiffs' statement in paragraph 10 that the defendants were employers as the term is defined by the FLSA is inaccurate"—the Court understands this argument to allege futility. (*Id.*) A court should deny leave to amend "where amendment would be futile," which occurs when "the complaint, as amended, would be subject to dismissal." *Jefferson Co. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). To avoid dismissal, a complaint "does not need detailed factual allegations" but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Thus the plaintiff must plead a plausible set of facts upon which a court could grant relief.

As pled, the Jensen Plantiffs' Amended Complaint may not survive a motion to dismiss. As to the individual Defendants, the Proposed Amended Complaint alleges only:

> Defendants, Dane Kay, Scott Peterson, Steve Peterson, Jim Salisbury, Steve Nadauld, Andrea Burgess, Scott Schill, Mark Noe, and Ellie Strong are alleged to be individuals acting directly or indirectly in the interest of Red Cliff Ascent, Inc., and Plaintiffs' employer and are therefore employers under the Fair Labor Standards Act.

(Pl.'s Mot. Ex. 3 Second Am. Compl. 2, ECF No. 38-3.) This allegation falls more into the "formulaic recitation of the elements" category rather than the plausible set of facts category showing a person may qualify as an employer within the FLSA. However, the Jensen Plaintiffs cite discovery in their Motion that shows that Noe and Strong had at least one of the powers

12

identified in *Baker* as evidence of operational control.[4]  Potential further discovery since filing this Motion may have further elucidated the roles of Noe and Strong within the company.  The Court thinks an Amended Complaint could avoid futility if the Jensen Plaintiffs can plead facts making plausible their claim that Redcliff Ascent employees Noe and Strong acted as employers of the Jensen Plaintiffs, thus making them potentially individually liable under an operational control analysis.

Accordingly, the Court GRANTS the Motion to Amend but warns the Jensen Plaintiffs that the attached Amended Complaint will not likely survive a Motion to Dismiss as written. Given the liberal amendment standard the Court allows the Jensen Plaintiffs to amend the Complaint as such an amendment may not prove futile.

---

[4]  INTERROGATORY NO. 8: For the Plaintiffs, and each of them, please identify all persons associated with the Defendant RedCliff Ascent who had the power to hire and fire employees, supervise and control employee work schedules or conditions of employment, determine the rate and method of payment, *or* maintain employment records.
RESPONSE TO INTERROGATORY NO. 8: Scott Schill, Andrea Burgess, Mark Noe, Ellie Strong.
(Pl.'s Mot Ex. 1 Def.'s Resp. to Pl.'s Disc. Reqs. 5, ECF No. 38-1 (emphasis added).)

## CONCLUSION

Construing the motion liberally, this Court finds the Jensen Plaintiffs provide sufficient facts in their Motion to suggest amending their Complaint would not prove futile. The Court notes, however, that the Jensen Plaintiffs have not plead facts sufficient to avoid futility of their Proposed Amended Complaint. Based upon information presented, the Court hereby GRANTS Plaintiff's Motion for leave to Amend Complaint.

Dated this 16th day of June, 2014.

> BY THE COURT:
>
> *Evelyn J. Furse*
> Evelyn J. Furse
> United States Magistrate Judge